UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Arthur Ginsberg</u>

    v.                                                Civil No. 05-cv-193-JM

<u>Kelly A. Ayotte, in her official</u>
<u>capacity as Attorney General</u>
<u>of the State of New Hampshire</u>

**O R D E R**

Plaintiff Arthur Ginsberg brought this action against Defendant Kelly A. Ayotte, in her official capacity as the Attorney General of the State of New Hampshire, challenging the constitutionality of N.H. Rev. Stat. Ann. ("RSA") 458:15-b. Defendant moves to dismiss for failure to state a claim upon which relief may be granted. Plaintiff objects.

<u>Standard of Review</u>

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court accepts the facts alleged in the complaint as true and determines whether "relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Lalonde v. Textron, Inc.</u>, 369 F.3d 1, 6 (1st Cir. 2004) (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002)). The Court draws all reasonable

inferences from the facts alleged in the plaintiff's favor. Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002). Dismissal of the complaint is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

A court adjudicating a motion to dismiss under Rule 12(b)(6) must consider the notice pleading requirements of Fed. R. Civ. P. 8(a)(2). Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004). Under Rule 8(a)(2), a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). The court eschews "any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." Educadores, 367 F.3d at 68 (quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)). The facts pertinent to the instant motion are discussed below.

Background

I.  Factual Allegations Specific to the Plaintiff

Plaintiff was a party in a divorce proceeding in the Hillsborough County Superior Court (the "Superior Court"), located in Nashua, New Hampshire, between September 1998 and July 2004.  First Am. Compl., ¶ 20.  As a result, Plaintiff was granted a divorce from Jennifer Wilson, formerly Jennifer Ginsberg, on the grounds of adultery.  Id.  He was awarded primary physical care and custody of their two daughters.  Id.

During the course of the divorce proceeding, Plaintiff filed five financial affidavits with the court; Jennifer Wilson filed six financial affidavits.  Id., ¶¶ 21-22.  Immediately after the docketing of each financial affidavit, the financial affidavit was made available for public inspection by any person who requests access to the public court file maintained in the case by the Clerk of the Superior Court.  Id., ¶ 23.  As of the filing of the instant complaint, those same eleven financial affidavits were available for public inspection.  Id.

Although Plaintiff and Jennifer Wilson are each required by the terms of the final decree to contribute to their daughters' post-secondary education, Plaintiff alleges that it has become

3

clear that he must entirely shoulder that burden in addition to all other costs associated with the upbringing of his 16-year-old and 19-year-old daughters. Id., ¶ 28. Plaintiff alleges that approximately $120,000.00 was provided to the children in the form of gifts earmarked for their education.[1] Id. For years, Plaintiff believed that those funds were held in accounts opened in the names of the two children by Jennifer Wilson. Id. Plaintiff has been unable to trace that money, and now believes that Jennifer Wilson misappropriated it. Id. Plaintiff plans to initiate litigation to recover the education funds and to obtain compensation for damages caused by Jennifer Wilson and any other liable parties. Id., ¶ 29.

As part of his efforts to trace the misappropriated funds, Plaintiff would like to disclose information contained in Jennifer Wilson's financial affidavits to a forensic accountant and other unnamed third parties, who will assist in the search for the funds. Id., ¶ 29. Jennifer Wilson's financial affidavits contain information that is available from other sources, including the Internet, credit agencies and databanks available to licensed investigators. Id., ¶ 31. Some of the

---

[1] Plaintiff does not identify the source of those funds in the amended complaint.

4

information that is included on Jennifer Wilson's financial affidavits Plaintiff acquired during the course of his and Jennifer Wilson's long marital relationship.  Id., ¶ 32.  Similar information is available on Plaintiff's and Jennifer Wilson's joint IRS returns, bank loan applications, credit card applications, mortgage applications, joint bank accounts, medical forms and insurance forms, among other things.  Id.

Plaintiff desires to obtain and discuss publicly available rulings issued under RSA Chapter 458 by the Superior Court without fear of penal sanction for revealing truthful information that may be included in a financial affidavit sealed pursuant to RSA 458:15-b.  Id., ¶ 34.  He further wishes to exercise his First Amendment right to publicly petition the New Hampshire Courts to redress his grievances while he participates in a fully open public proceeding.  Id., ¶ 35.

II.  The Challenged Statute

    A.  Financial Affidavits in Domestic Relations Cases

New Hampshire Superior Court Rule 197 requires parties in domestic relations proceedings to file financial affidavits "[a]t every hearing involving financial matters or property, or as may be required by the court."  Financial affidavits filed under Rule

197 must contain full disclosure of a party's assets, expenses and income.  <u>In re Rohdenburg</u>, 149 N.H. 276, 278, 818 A.2d 309, 311 (2003).  This mandatory duty of complete disclosure may not be waived by the parties or the court.  <u>Id.</u>, 818 A.2d at 311-312.  A party may make a written request to the clerk requesting that the party's financial affidavit be placed "in a sealed envelope, which shall not be opened except by the parties, the Office of Child Support, or with leave of court."  N.H. Superior Court Rule 197.  Plaintiff alleges, on information and belief, that "the vast majority of financial affidavits filed in New Hampshire Superior Court domestic relations proceedings are not sealed under the optional procedure provided in Superior Court Rule 197."  First Am. Compl., ¶ 26.

    B.   <u>House Bill 384</u>

During its 2004 session, the New Hampshire Legislature amended RSA 458:15 by adding section 15-b, an act relative to financial affidavits in domestic relations cases.  2004 N.H. Laws 202:2 (HB 384).  RSA 458:15-b now provides that:

> I.  Except as provided in paragraph III, all financial affidavits filed under this chapter shall be confidential and accessible only to the parties, their attorneys, the guardian ad litem, department of health and human services employees responsible for child support administration, persons specified in RSA 161-

B:7, III,[2] and state and federal officials for the purpose of carrying out their official functions.

II.  Any person who knowingly discloses a financial affidavit to any person not authorized to obtain the financial affidavit under this section shall be guilty of a misdemeanor.  This paragraph shall not apply to documents released by a court pursuant to paragraph III.

III.  Notwithstanding paragraph I, the court may grant access to a financial affidavit filed under this chapter to a person upon a showing by clear and convincing evidence that the public interest served by release of the information outweighs the private interest served by maintaining the privacy of the financial affidavit.  For the purposes of this paragraph, the right of the public to access court records shall not, absent further cause, constitute sufficient evidence to overcome the presumption of privacy contained in paragraph I.

RSA 458:15-b (2005).  RSA 458:15-b was enacted on June 11, 2004 and first became effective on August 10, 2004.  House Bill 384, the origin of the challenged statute, provides that RSA 458:15-b "shall apply to all proceedings under RSA 458 filed or brought forward on or after the effective date of this act."  See First Am. Compl. at 4.

The legislative history of RSA 458:15-b shows that the New Hampshire Legislature viewed the legislation as a means to

---

[2]RSA 458:15-b(I) was amended by House Bill 510 effective September 3, 2005 to add the phrase "persons specified in RSA 161-B:7, III."

protect personal privacy.  Id., ¶ 16.  Plaintiff alleges, however, that "the legislative record is completely silent on any studies, surveys, or findings that indicated the extent to which the public was obtaining access to financial affidavits in court files."  Id.  Plaintiff further alleges that the legislative record "contains no information on whether access to financial affidavits had either resulted in or would prevent identity theft," id., and that "the legislature never considered a less restrictive alternative to blanket confidentiality of the entire contents of financial affidavits filed in domestic relations cases."  Id., ¶ 18.  Plaintiff alleges that neither the New Hampshire Supreme Court nor the New Hampshire Legislature has explicitly considered the constitutional rights of litigants in domestic relations proceedings who do not wish to seal any record contained in their divorce file.  Id., ¶ 36.

III. Requested Relief

Plaintiff seeks declaratory and injunctive relief on the grounds that RSA 458:15-b violates his rights under the United States Constitution.  Plaintiff claims that RSA 458:15-b violates his rights to petition for redress of grievances, freedom of speech and freedom of the press under the First Amendment, his

due process right to notice of prohibited conduct under the Fifth Amendment, and his rights under the Equal Protection Clause of the Fourteenth Amendment.

## Discussion

I. <u>Subject Matter Jurisdiction</u>

This Court has original jurisdiction in civil actions arising under the Constitution and the laws of the United States. 28 U.S.C. § 1331. In this action, Plaintiff alleges that RSA 458:15-b violates his rights secured by the First, Fifth and Fourteenth Amendments to the Constitution. He brings this action under 42 U.S.C. § 1983 against the Attorney General, as she is charged with enforcing the challenged statute. <u>See</u> RSA 7:6. Plaintiff seeks declaratory and injunctive relief.

Federal courts are obligated to ensure that subject matter jurisdiction exists to decide the cases before them. <u>McCulloch v. Velez</u>, 364 F.3d 1, 5 (1st Cir. 2004) ("It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction"); <u>Prou v. United States</u>, 199 F.3d 37, 45 (1st Cir. 1999) ("the question of subject-matter jurisdiction is always open: courts at every stage of the proceedings are obligated to consider the issue even though the

parties have failed to raise it"). Whether a federal court has subject matter jurisdiction "ordinarily depends on the facts as they exist when the complaint is filed." Mangual v. Rotger-Sabat, 317 F.3d 45, 58 (1st Cir. 2003).

In order for this Court to have subject matter jurisdiction over Plaintiff's action, the Court must find that this matter presents a case or controversy under Article III of the United States Constitution. See U.S. Const. art. III, § 2; 28 U.S.C. § 2201. The federal court's jurisdiction can be invoked only when the plaintiff has suffered some actual or threatened injury resulting from allegedly illegal or unconstitutional conduct. Warth v. Seldin, 422 U.S. 490, 499 (1975).

"A paradigm of a case or controversy under Article III is a challenge to a statute that imposes criminal penalties for constitutionally protected activities by a person likely to be subject to the statute." Mangual, 317 F.3d at 56 (citing Diamond v. Charles, 476 U.S. 54, 64 (1986)). There is no requirement that a person violate a statute and subject himself to punishment to create a case or controversy within the federal court's jurisdiction. Id. (citing Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).

> In challenges under the First Amendment, two types of injuries may confer Article III standing without necessitating that the challenger actually undergo a criminal prosecution. The first is when "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution" . . . "The second type of injury is when a plaintiff "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences."

Id. at 56-57 (citations omitted). A plaintiff must have a specific and objectively reasonable fear of prosecution to demonstrate Article III standing for either type of injury. Id. at 57 (citing Laird v. Tatum, 408 U.S. 1, 13-14 (1972)).

Although a plaintiff may have standing to make a pre-enforcement challenge to a statute, as in the circumstances discussed above, a federal court nonetheless lacks jurisdiction to decide a controversy that is not ripe for judicial review. The doctrine of ripeness "asks whether an injury that has not yet happened is sufficiently likely to happen" to warrant judicial review. Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198, 205 (1st Cir. 2002) (quoting 13A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure, § 3531.12, at 50 (2d ed. 1984) (further citations omitted)). The function of the doctrine is "to prevent the courts, through

11

avoidance of premature adjudication, from entangling themselves in abstract disagreements." R.I. Ass'n of Realtors v. Whitehouse, 199 F.3d 26, 33 (1st Cir. 1999) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)).

To determine the issue of ripeness, a court must evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Mangual, 317 F.3d at 59 (quoting Abbott Labs., 387 U.S. at 149). The fitness inquiry "involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." R.I. Ass'n of Realtors, 199 F.3d at 33 (quoting Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995)). The critical question, however, is "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Ernst & Young, 45 F.3d at 536. The hardship inquiry "typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties." R.I. Ass'n of Realtors, 199 F.3d at 33.

In the context of a pre-enforcement challenge, as in the instant case, a plaintiff "must have concrete plans to engage

12

immediately (or nearly so) in an arguably proscribed activity" to meet the requirement of ripeness.  Id.  "A showing that the challenged statute, fairly read, thwarts implementation of the plan adds the element of hardship."  Id.

II.  Whether Plaintiff's Challenge to RSA 458:15-b is Ripe

Applying the ripeness requirements discussed above, the Court must determine whether Plaintiff's constitutional claims were ripe for decision when this action was filed.  Taking the facts alleged in the amended complaint as true, Plaintiff desires to disclose information contained in Jennifer Wilson's financial affidavits to a forensic accountant and to other third parties, who will assist in a search for misappropriated funds that rightfully belong to his two children.  Plaintiff plans to initiate litigation to recover the funds and to obtain compensation for damages caused by Jennifer Wilson and any other liable parties.

Plaintiff alleges in his complaint that he already has information contained in Jennifer Wilson's financial affidavits, which he obtained during the course of the parties' long marital relationship.  The Attorney General shares the Court's view that RSA 458:15-b cannot be fairly read to reach out and make

confidential, and subject to punishment after disclosure, information that Plaintiff lawfully obtains and discloses independent of Jennifer Wilson's financial affidavits. Such disclosures would not constitute disclosure of the financial affidavits and therefore would not violate RSA 458:15-b. See Def.'s Mem. of Law In Support of Def.'s Mot. to Dismiss at 18; see also Butterworth v. Smith, 494 U.S. 624, 636 (1990) (Scalia, J., concurring) (finding that there is considerable doubt whether a grand jury witness could be prohibited from making public, even while a grand jury is sitting, what the witness knew before he entered the grand jury room).

   Moreover, Plaintiff alleges that as of the filing of his complaint, Jennifer Wilson's financial affidavits were available at the Superior Court for inspection by any member of the public. Plaintiff's divorce proceeding concluded before the effective date of RSA 458:15-b, so the statutory presumption of confidentiality of financial affidavits did not yet apply. See In re Keene Sentinel, 136 N.H. 121, 128, 612 A.2d 911, 916 (1992) ("there is a presumption that court records are public and the burden of proof rests with the party seeking closure or nondisclosure of court records to demonstrate with specificity

that there is some overriding consideration or special circumstance, that is, a sufficiently compelling interest, which outweighs the public's right of access to those records"); Douglas v. Douglas, 146 N.H. 205, 208, 772 A.2d 316, 318 (2001) (same).  Thus, there is no apparent bar preventing Plaintiff's forensic accountant, or any other third person, from reviewing Jennifer Wilson's financial affidavits as part of Plaintiff's investigation regarding the missing funds and discussing his or her findings with the Plaintiff.

The facts alleged in the amended complaint demonstrate that Plaintiff's challenge to RSA 458:15-b is not ripe because he does not have a concrete plan to engage immediately in an activity that is proscribed by the challenged statute.  Therefore, the issues raised in this lawsuit are not fit for judicial determination because Plaintiff's claims involve uncertain and contingent events that may not occur as anticipated, or may not occur at all.  Plaintiff may or may not decide to pursue litigation against Jennifer Wilson and others after completing his investigation for the allegedly misappropriated funds.  And any such litigation may or may not present confidentiality issues under RSA 458:15-b.

Furthermore, Plaintiff does not meet the hardship element of the ripeness inquiry. RSA 458:15-b cannot be fairly read to thwart the implementation of the plan that Plaintiff describes in his complaint. Postponing adjudication of Plaintiff's constitutional claims until after he completes his investigation of the misappropriation claim and initiates litigation pertaining to it will not cause him a substantial hardship. To the extent that Plaintiff claims that RSA 458:15-b imposes a chilling effect on the activities that he intends to engage in, the Court finds that his fear of prosecution is not objectively reasonable.

This case is analogous to another case filed in this court that was found to present a constitutional challenge that was not ripe for decision. In <u>Kamasinski v. N.H. Sup. Ct. Comm. on Judicial Conduct</u>, No. Civ. 94-10-M, 1995 WL 89344 (D.N.H. Feb. 27, 1995), the Plaintiff sought "a declaration that certain rules of the New Hampshire Supreme Court requiring confidentiality of proceedings before the Committee on Judicial Conduct" violated his First Amendment right to free speech. <u>Id.</u> at *1. The plaintiff, who was uncertain as to whether the confidentiality rules would apply to him if he filed his intended petition against an unnamed New Hampshire judge, filed an action seeking a

16

declaratory judgment in this court.  Id. at *2.  Plaintiff argued that if the challenged confidentiality rules applied to him that he would be prohibited "from publicly disclosing the substance of his complaint, or any facts relating to it, thereby depriving him of his constitutionally protected right to freedom of speech."  Id.

The court found that the complaint in Kamasinski presented a "speculative situation" because the plaintiff did not presently face a choice of abandoning his right to petition or risk possible sanctions under the challenged confidentiality rules.  Id. at *3.

> Merely filing a petition with the CJC will not expose
> plaintiff to any form of penalty or sanction.  And,
> unless and until he files a petition with the CJC,
> plaintiff is entirely free to exercise his
> constitutional right to free speech.  He may freely
> discuss his alleged grievances whenever and with
> whomever he chooses, without violating any law or
> regulation.  The CJC confidentiality rules simply do
> not apply to him nor will they ever apply to him,
> unless he should actually file a complaint against a
> New Hampshire judge with the CJC, thereby invoking its
> jurisdiction (and rules).

Id. (emphasis in original).  Similarly, in the instant case, Plaintiff's plan to investigate his ex-wife's alleged misappropriation of his children's education funds and to initiate litigation against her is not proscribed by RSA 458:15-

17

b. Plaintiff may use the financial information that he already possesses, and information that is available to licensed investigators, to investigate the misappropriation claim whether or not that information appears on financial affidavits that Jennifer Wilson filed in the divorce proceeding. Moreover, by Plaintiff's own admission, Jennifer Wilson's financial affidavits are available for inspection at the Superior Court by any member of the public, including his forensic accountant, upon request. Therefore, Plaintiff's current constitutional challenge is speculative and hypothetical. Id. (citing North Carolina v. Rice, 404 U.S. 244, 244 (1971) (a case must involve "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.").

If Plaintiff decides, after further investigation, that it is necessary to bring forward his divorce case or commence a new domestic relations proceeding,[3] and if the Superior Court finds

---

[3] As alleged in the amended complaint, the missing funds are not marital assets, but rather are assets that belong to the children. Therefore, any litigation to recover those funds would appear to be appropriately brought as a common law action for conversion by a guardian ad litem as opposed to reopening the divorce case.

that the confidentiality provisions of RSA 458:15-b prevent Plaintiff from making disclosures that he wishes to make at that time, then Plaintiff's declaratory judgment action would likely be ripe for judicial review.  None of those possibilities are presented concretely now.  Accordingly, the Court finds that Plaintiff's amended complaint must be dismissed for lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(h)(3).[4]

Conclusion

For the reasons set forth above, Plaintiff's amended complaint is dismissed for lack of subject matter jurisdiction. Defendant's motion to dismiss for failure to state claim (document no. 16) is moot.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: December 15, 2005

---

[4]In this action, Plaintiff sought to represent a class of similarly situated individuals in New Hampshire who have access to information contained in any financial affidavit filed in any New Hampshire Superior Court under Chapter 458.  See First Am. Compl., ¶ 7.  In light of the Court's decision on the issue of subject matter jurisdiction, consideration of Plaintiff's request for class certification is unnecessary.

```
cc:  Jill Dinneen, Esq.
     Wynn E. Arnold, Esq.
```